**S. CHANDLER VISHER** - S.B.N 52957
268 Bush Street #4500
San Francisco, CA 94194
Telephone: (415) 901-0500
Facsimile: (415) 904-0504
chandler@visherlaw.com

BRIAN J. WANCA (*pro hac to be submitted*)
Wallace C. Solberg (*pro hac to be submitted*)
**ANDERSON & WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
bwanca@andersonwanca.com
wsolberg@andersonwanca.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

|  |  |
|---|---|
| BRIAN HEINZ, ERIC SWEETEN, MARIE EDWARDS, LULA LEWIS, SHARON MUANGPRASERT, and TYREE CALDWELL, individually and as the representatives of classes of similarly-situated persons,<br><br>        Plaintiffs,<br><br>   v.<br><br><br><br>THE LIFETIME VALUE CO. LLC, a Delaware<br><br>limited liability company,<br><br>        Defendant. | No.<br><br>**CLASS ACTION COMPLAINT** |

**CLASS ACTION COMPLAINT**

Plaintiffs Brian Heinz ("Heinz"), Eric Sweeten ("Sweeten"), Marie Edwards ("Edwards"), Lula Lewis ("Lewis"), Sharon Muangprasert ("Muangprasert"), and Tyree Caldwell ("Caldwell") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, through their attorneys, allege the following against Defendant The Lifetime Value Co. LLC ("Lifetime" or "Defendant"):

**NATURE OF ACTION**

1.      Plaintiffs and members of the proposed classes seek statutory damages, an injunction, and other relief for violations of their right of publicity, as protected by statutes in the following states: California, Nevada, Indiana, and Alabama.

2.      As discussed in detail below, each of the aforementioned states prohibits the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See*, California Civil Code § 3344, *et seq.*; Nevada Right of Publicity Statute ("NRPS"), NV ST § 597.770, *et seq.*; Indiana Publicity Code, IC 32-36-1, *et seq.*, and the Alabama Right of Publicity Act ("ARPA") Ala. Code § 6-5-770, *et seq.*

3.      Lifetime is a tech company that builds web and app products.  One such product is an internet-based search platform called PeopleSmart.

4.      PeopleSmart enables users to conduct people searches in order to find up-to-date contact information quickly. Visitors to PeopleSmart are able to search for individuals by name, employer, job title, email addresses, phone numbers, or usernames. Results of these searches generate reports on individuals matching criteria of the searches and include such information as full names, place of work, educational background, email addresses, telephone numbers, and social media accounts. These reports enable users to accurately identify an individual.

5.      To view these reports, a user must enter into a paid-for seven-day trial of PeopleSmart, which converts to a monthly subscription unless cancelled. The purpose of the seven-day trial, along with the limited access to the reports generated on the website during the trial, is to

familiarize the user with the platform and to entice that user to enter into a monthly subscription plan for continued use of the platform.

6.     Plaintiffs and the Classes neither  subscribe to nor use PeopleSmart. More importantly, Plaintiffs and the Classes never provided Lifetime with written consent to use their names, identities, and other personal information contained in the reports generated by PeopleSmart to advertise subscriptions for the PeopleSmart platform.

7.     Despite failing to obtain consent from Plaintiffs and the Classes, Lifetime nevertheless utilized their personal identifying information for the purpose of enticing users of its PeopleSmart platform to enter into paid subscriptions for full and continued access to reports generated by the platform database  and profiles contained in the platform database. In other words, Lifetime used Plaintiffs' and other Class Members' identities for commercial purposes without their written permission in violation of the aforementioned state laws.

8.     Plaintiffs bring this Complaint seeking an order (i) declaring that Lifetime's conduct violates their right of publicity as defined by the various statutes, (ii) requiring that Lifetime cease the unlawful activities described herein and enjoining Lifetime from committing the unlawful activities in the future, (iii) awarding Plaintiffs and the proposed Classes statutory damages in an amount prescribed by statute per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and reasonable attorneys' fees, court costs, and other expenses associated with this action where permitted by law.

## PARTIES

9.     Plaintiff Brian Heinz is a citizen of the State of California residing in West Sacramento in Yolo County.

10.     Plaintiff Eric Sweeten is a citizen of the State of California residing in Sacramento in Sacramento County.

11.     Plaintiff Marie Edwards is a citizen of the State of Nevada residing in Henderson.

12.     Plaintiff Lula Lewis is a citizen of the State of Indiana residing in Valparaiso.

2

13.     Plaintiff Sharon Muangprasert is a citizen of the State of Indiana residing in Evansville.

14.     Plaintiff Tyree Caldwell is a citizen of the State of Alabama residing in Opelika.

15.     Defendant Lifetime is a Delaware limited liability company with its principal place of business located in New York City, New York.  For its online platform PeopleSmart, Lifetime seeks out and compiles names and other identifying information of California, Nevada, Indiana and Alabama citizens and uses that information to market monthly subscriptions for PeopleSmart to California, Nevada, Indiana and Alabama citizens and others without written consent.

**JURISDICTION AND VENUE**

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties – Plaintiffs Heinz and Sweeten are citizens of California, Plaintiffs Edwards, Lewis, Muangprasert and Caldwell are citizens of other states, and Lifetime is a Delaware limited liability company with its principal place of business in New York.  Further, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, with at least 100 or more potential Class Members based on the number of individuals identified in Lifetime's PeopleSmart platform and the damages available through the various statutes.

17.     This Court has personal jurisdiction over Lifetime because it conducts business in this District, and some of the unlawful conduct alleged in the Complaint occurred in and/or was directed to it. Lifetime sought out and compiled the names and other identifying information of the Plaintiffs Brian Heinz, Eric Sweeten, and other California citizens and used that information for marketing to California citizens and others without written consent. In so doing, Lifetime's statutory violations related to the matters complained of herein occurred in this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims of Plaintiffs Brian Heinz and Eric Sweeten occurred in this District. Lifetime, through its proprietary platform, collected and used

CLASS ACTION COMPLAINT

Brian Heinz's and Eric Sweeten's personal information for commercial purposes without their consent. In so doing, Lifetime violated their right of publicity, as well as the right of publicity of other California putative Class Members residing in this District.

19.   <u>Intradistrict Assignment</u>: Pursuant to Civil L.R. 120(d), assignment to the Sacramento Division of the Eastern District of California (the "Division") is proper because some of the conduct alleged in the Complaint occurred in Sacramento County where Plaintiff Brian Heinz resides and Yolo County where Plaintiff Eric Sweeten resides. By using Brian Heinz's and Eric Sweeten's personal information without their consent and other Sacramento Division class members' personal information without their consent, a substantial part of the acts and omissions giving rise to the statutory violations complained of occurred in this Division.

## CALIFORNIA CIVIL CODE § 3344

20.   Pursuant to California Civil Code § 3344, the use of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent, is prohibited.

21.   Section 3344 provides for damages for a violation in an amount equal to the greater of $750 or the actual damages suffered as a result of the unauthorized use. Punitive damages may also be awarded, as well as attorney's fees and costs.

## NEVADA RIGHT OF PUBLICITY STATUTE

22.   NRPS recognizes that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person." NV ST § 597.790.

23.   NRPS prohibits the commercial use of an individual's name, voice, signature, photograph, or likeness within Nevada without first obtaining written consent. *Id.*

24.   A violation of NRPS may result in statutory damages in the amount of $750 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. NV ST § 597.810. NRPS further provides that punitive damages may be awarded for willful violations and authorizes the issuance of injunctive relief where appropriate. *Id.*

CLASS ACTION COMPLAINT

**INDIANA CODE § 32-36-1, *et seq.***

25.     Under Indiana's Publicity Code, an individual's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism (*i.e.* "identity") is afforded protection from unauthorized commercial use provided the individual's identity has commercial value.[1] IC 32-36-1-6, 32-36-1-8. In other words, Indiana's Publicity Code protects an individual's right of publicity.

26.     Section 32-36-1-8 of the Publicity Code prohibits the use of an individual's personality for a commercial purpose within Indiana without first obtaining prior written permission.

**ALABAMA RIGHT OF PUBLICITY ACT – Ala. Code § 6-5-770, *et seq.***

27.     The Alabama Right of Publicity Act ("ARPA") protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] …. likeness." AL ST § 6-5-772.

28.     ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

29.     Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  Al St § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

**FACTUAL ALLEGATIONS**

30.     Lifetime is a tech that specializes in "creating tools for both consumers and businesses to find and leverage data for a variety of uses.[2]  Lifetime touts that it builds "best-in-class web products and apps to put the power of information into the hands of [its] customers."

---

[1] The Code defines and refers to such "identity" as "personality." *See* IC 32-36-1-6.

[2] Information for Lifetime found at its website, www.ltvco.com, last visited on October 1, 2023.

CLASS ACTION COMPLAINT

31.     One such product is PeopleSmart, a web-based search engine that helps users "find relevant leads, prospects and customers with up-to-date contact info quickly." PeopleSmart allows users to search through over 100 million business contacts and provides over 100 million direct telephone numbers and email addresses. PeopleSmart is geared towards professionals seeking to grow their businesses through quick and accurate access to contacts for sales, marketing, and recruiting.

32.     A visitor to the PeopleSmart website can use the platform to find and filter information about individuals. A prospective customer can perform a person, phone, email, or username search by selecting their desired search type, which is located at the center of the webpage.

33.     For example, a prospective customer can enter a person's name on the search tab provided to initiate a search. The customer also has the option to narrow the search by including a company name and state. Once this information is entered, PeopleSmart begins to search its database for matching results. However, prior to revealing the search results, PeopleSmart requires the prospective customer to sign up for a paid for seven-day trial.

34.     PeopleSmart offers two types of trials: the "Casual" plan for $1 and the "Plus" plan for $5. Both trials allow the prospective customer to access 50 reports during the seven-day trial period. The main difference between the two is that the Plus plan additionally provides customers with the ability to download reports of searched individuals to a PDF file.

35.     After the trial plan is selected, the prospective customer provides payment information, consents to automatic membership renewal, and consents to the Terms of Service and Privacy Policy. Once this is completed, the prospective customer can view the search results that fall within the search parameters and access the reports generated.

36.     Reports generated by PeopleSmart reveal basic identifying information of an individual searched, such as the person's full name, place of work and position, state and city, social media, educational and career background, email, and phone number. According to PeopleSmart, the underlying data is updated regularly. Thus, the reports contain enough information to identify a person specifically, even if a search generates more than one report.

6

37.     At the conclusion of the trial period, the prospective customer is automatically enrolled into a monthly subscription plan. Lifetime offers three types of subscription plans for PeopleSmart: a basic plan for $39 a month; a professional plan for $69 a month; and a business plan for $99 a month. The only difference between the plans is the number of reports that can be accessed during the month.

38.     The purpose behind Lifetime's trial of PeopleSmart and limited access to reports generated using the platform during the trial period is singular: to advertise and convince prospective customers to enroll in and ultimately purchase monthly subscriptions for PeopleSmart, whereby the user can guarantee continual access to reports generated by the platform. In other words, Lifetime's use of individuals' identity attributes included in the reports in conjunction with its  preview mode (7-day trial for $1.00 or $5.00, *see supra*) is part of Lifetime's overall effort to sell its monthly subscriptions.

39.     On information and belief, Lifetime's PeopleSmart program searches for personal information of individuals, including Class Members, without their knowledge or awareness in order to create reports for the platform. Lifetime does not request or obtain consent or written authorization from those individuals before using their personal information and identities to market its paid subscription services as described herein.

40.     While Lifetime offers individuals the opportunity to opt out of PeopleSmart, this is of little help since the vast majority of people are unaware that reports about them are generated by and accessible on the platform in the first place.

41.     Plaintiffs did not give consent, written or otherwise, to Lifetime to use their names, likenesses, personal information, or identities in any way. Nor did Plaintiffs provide Lifetime with written consent to use their identities for commercial purposes. Had Lifetime requested their consent, Plaintiffs would not have provided it.

42.     Plaintiffs do not know how Lifetime obtained their names and identifying information. On information and belief, Lifetime or some third-party data broker compiled their information from online sources, including their social media accounts and public records.

CLASS ACTION COMPLAINT

43.     Lifetime did not obtain written consent from Plaintiffs prior to compiling their personal information to create profiles for its platform. Lifetime also did not obtain prior written permission to use those profiles to advertise its seven-day trial subscription, which automatically converts to a monthly subscription for its platform.

44.     Plaintiffs have intellectual property and privacy interests in their names, likenesses, and identities recognized by statutory and common law. Plaintiffs have the right to exclude anyone from using their identities for commercial purposes without their written permission.

45.     Lifetime has injured Plaintiffs by using their identities for its own commercial purposes without compensation or permission.

46.     Lifetime's illegal actions caused Plaintiffs distress by using their identities to advertise subscriptions to PeopleSmart that they have no interest in promoting. Plaintiffs are further distressed by the fact that Lifetime's use of their identities in this manner encourages and enables harassing and uninvited marketing and sales communications with them.

**Facts relating to Brian Heinz (California)**

47.     As of November 2024, Brian Heinz's identity was accessible through PeopleSmart. When his name is searched for on PeopleSmart, a message indicates that a report for him is available. However, to access his report, a seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

48.     After agreeing to a seven-day trial membership, his report can be reviewed, which includes his name, current employment, email addresses, employment history, and educational background.

49.     Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view information on Heinz during the seven-day trial membership. Thus, Heinz's identity has been used by Lifetime to market its PeopleSmart platform.

50.     Heinz has no relationship with Lifetime.  He neither utilizes the platform nor subscribes to it.

CLASS ACTION COMPLAINT

51.     Heinz did not give consent, written or otherwise, to Lifetime to use his name, likeness, personal information, or identity in any way. Nor did Heinz provide Lifetime with written consent to use his identity for commercial purposes. Had Lifetime requested his consent, Heinz would not have provided it.

52.     Heinz does not know how Lifetime obtained his name and identifying information for its PeopleSmart platform.  On information and belief, Lifetime compiled his information from online sources, including his social media accounts and public records.

53.     Heinz has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law.  Heinz's name, likeness, and identity also has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Heinz has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

54.     Lifetime's use of Heinz's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Heinz is a willing participant in the platform, which he is not, and wants to be targeted by sales and marketing professionals, which he does not.

55.     Lifetime injured Heinz by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications

### Facts relating to Eric Sweeten (California)

56.     As of November 2024, Eric Sweeten's identity was accessible through PeopleSmart. When his name is searched for on PeopleSmart, a message indicates that a report for him is available.  However,  to access his report, a seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

57.     After agreeing to a seven-day trial membership, his report can be reviewed, which includes his name, current employment, email addresses, employment history, and educational background.

CLASS ACTION COMPLAINT

58.     Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view information on Sweeten during the seven-day trial membership. Thus, Sweeten's identity has been used by Lifetime to market its PeopleSmart platform.

59.     Sweeten has no relationship with Lifetime. He neither utilizes the platform nor subscribes to it.

60.     Sweeten did not give consent, written or otherwise, to Lifetime to use his name, likeness, personal information, or identity in any way. Nor did Sweeten provide Lifetime with consent to use his identity for commercial purposes. Had Lifetime requested his consent, Sweeten would not have provided it.

61.     Sweeten does not know how Lifetime obtained his name and identifying information for its PeopleSmart platform.  On information and belief, Lifetime compiled his information from online sources, including his social media accounts and public records.

62.     Sweeten has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law. Sweeten's name, likeness, and identity also has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Sweeten has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

63.     Lifetime's use of Sweeten's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Sweeten is a willing participant in the platform, which he is not, and wants to be targeted by sales and marketing professionals, which he does not.

64.     Lifetime injured Sweeten by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

**Facts Relating to Marie Edwards (Nevada)**

65.     As of November 2024, Marie Edwards' identity was accessible through PeopleSmart. When her name is searched for on PeopleSmart, a message indicates that a report for

CLASS ACTION COMPLAINT

her is available. However, to access her report, a seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

66.    After agreeing to a seven-day trial membership, her report can be reviewed, which includes her name, current employment, email addresses, employment history, and educational background.

67.    Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view information on Edwards during the seven-day trial membership. Thus, Edwards' identity has been used by Lifetime to market its PeopleSmart platform.

68.    Edwards has no relationship with Lifetime. She neither utilizes the platform nor subscribes to it.

69.    Edwards did not give consent, written or otherwise, to Lifetime to use her name, likeness, personal information, or identity in any way. Nor did Edwards provide Lifetime with written consent to use her identity for commercial purposes, as required by Nevada law. Had Lifetime requested her consent, Edwards would not have provided it.

70.    Edwards does not know how Lifetime obtained her name and identifying information for its PeopleSmart platform. On information and belief, Lifetime compiled her information from online sources, including her social media accounts and public records.

71.    Edwards has intellectual property and privacy interests in her name, likeness, and identity recognized by Nevada statutory law. Edwards' name, likeness, and identity also has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Edwards has the right to exclude anyone from using or taking advantage of her name, likeness, and persona for commercial purposes without her written permission.

72.    Lifetime's use of Edwards' identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Edwards is a willing participant in the platform, which she is not, and wants to be targeted by sales and marketing professionals, which she does not.

CLASS ACTION COMPLAINT

73.     Lifetime injured Edwards by using her name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting her to harassing and uninvited marketing and sales communications.

### Facts relating to Lula Lewis (Indiana)

74.     As of October 2024, Lula Lewis' identity was accessible through PeopleSmart. When her name is searched for on PeopleSmart, a message indicates that a report for her is available. However, to access her report, a seven-day trial membership, which automatically coverts to a monthly subscription, must be initiated.

75.     After agreeing to a seven-day trial membership, her report can be reviewed, which includes her name, current employment, email addresses, employment history, and educational background.

76.     Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view information on Lewis during the seven-day trial membership. Thus, Lewis' identity has been used by Lifetime to market its PeopleSmart platform.

77.     Lewis has no relationship with Lifetime. She neither utilizes the platform nor subscribes to it.

78.     Lewis did not give consent, written or otherwise, to Lifetime to use her name, likeness, personal information, or identity in any way. Nor did Lewis provide Lifetime with written consent to use her identity for commercial purposes, as required by Indiana law. Had Lifetime requested her consent, Lewis would not have provided it.

79.     Lewis does not know how Lifetime obtained her name and identifying information for its PeopleSmart platform.  On information and belief, Lifetime compiled her information from online sources, including her social media accounts and public records.

80.     Lewis has intellectual property and privacy interests in her name, likeness, and identity recognized by Indiana statutory law. Lewis' name, likeness, and identity also has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Lewis

CLASS ACTION COMPLAINT

1  has the right to exclude anyone from using or taking advantage of her name, likeness, and persona

2  for commercial purposes without her written permission.

3      81.    Lifetime has injured Lewis by using her name, likeness, and persona for its own

4  commercial purposes without compensation or permission and potentially subjecting her to

5  harassing and uninvited marketing and sales communications.

6                    **Facts relating to Sharon Muangprasert (Indiana)**

7      82.    As of October 2024, Sharon Muangprasert's identity was accessible through

8  PeopleSmart.  When her name is searched for on PeopleSmart, a message indicates that a report for

9  her is available.  However, to access her report, a seven-day trial membership, which automatically

10  converts to a monthly subscription, must be initiated.

11     83.    After agreeing to a seven-day trial membership, her report can be reviewed, which

12  includes her name, current employment, email addresses, employment history, and educational

13  background.

14     84.    Potential customers availing themselves of Lifetime's PeopleSmart platform are able

15  to view information on Muangprasert during the seven-day trial membership. Thus, Muangprasert's

16  identity has been used by Lifetime to market its PeopleSmart platform.

17     85.    Muangprasert has no relationship with Lifetime.  He neither utilizes the platform nor

18  subscribes to it.

19     86.    Muangprasert did not give consent, written or otherwise, to Lifetime to use her name,

20  likeness, personal information, or identity in any way. Nor did Muangprasert provide Lifetime with

21  consent to use her identity for commercial purposes, as required by Indiana law. Had Lifetime

22  requested his consent, Muangprasert would not have provided it.

23     87.    Muangprasert does not know how Lifetime obtained her name and identifying

24  information for its PeopleSmart platform.   On information and belief, Lifetime compiled her

25  information from online sources, including her social media accounts and public records.

26     88.    Muangprasert has intellectual property and privacy interests in her name, likeness,

27  and identity recognized by Indiana statutory law.  Muangprasert's name, likeness, and identity also

28

CLASS ACTION COMPLAINT

has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Muangprasert has the right to exclude anyone from using or taking advantage of her name, likeness, and persona for commercial purposes without her written permission.

89.     Lifetime's use of Maungprasert's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Maungprasert is a willing participant in the platform, which she is not, and wants to be targeted by sales and marketing professionals, which she does not.

90.     Lifetime injured Muangprasert by using her name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting her to harassing and uninvited marketing and sales communications.

### Facts Relating to Tyree Caldwell (Alabama)

91.     As of November 2024, Tyree Caldwell's identity was accessible through PeopleSmart.  When his name is searched for in PeopleSmart, a message indicates that a report for him is available.  However, to access his report, a seven-day trial membership, which automatically converts to a monthly subscription, must be initiated.

92.     After agreeing to a seven-day trial membership, his report can be reviewed, which includes his name, current employment, email addresses, employment history, and educational background.

93.     Potential customers availing themselves of Lifetime's PeopleSmart platform are able to view information on Caldwell during the seven-day trial membership.  Thus, Caldwell's identity has been used by Lifetime to market its PeopleSmart platform.

94.     Caldwell has no relationship with Lifetime.  He neither utilizes the platform nor subscribes to it.

95.     Caldwell did not give consent, written or otherwise, to Lifetime to use his name, likeness, personal information, or identity in any way. Nor did Caldwell provide Lifetime with consent to use his identity for commercial purposes, as required by Alabama law. Had Lifetime requested his consent, Caldwell would not have provided it.

CLASS ACTION COMPLAINT

96.    Caldwell does not know how Lifetime obtained his name and identifying information for its PeopleSmart platform. On information and belief, Lifetime compiled his information from online sources, including his social medial accounts and public records.

97.    Caldwell has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama statutory law. Caldwell's name, likeness, and identity also has commercial value as evidenced by Lifetime's use of it for marketing and website purposes. Caldwell has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

98.    Lifetime's use of Cadwell's identity to advertise subscriptions to PeopleSmart is misleading in that it gives the false impression that Caldwell is a willing participant in the platform, which he is not, and wants to be targeted by sales and marketing professionals, which he does not.

99.    Lifetime injured Caldwell by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

## **CLASS ALLEGATIONS**

100.    Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and classes of similarly situated persons.

101.    Each of the Plaintiffs seeks to represent a class of individuals comprised of citizens and residents of the State from which they are citizens and residents.

102.    The Classes that Plaintiffs seek to represent are defined as follows:

**A. California Class (Heinz and Sweeten)**
All current and former California residents who are not subscribers to Lifetime's platform and whose name and/or identity have been used to market paid subscriptions for Lifetime's platform.

**B. Nevada Class (Edwards)**
All current and former Nevada residents who are not subscribers to Lifetime's platform and whose name and/or identity have been used to market paid subscriptions for Lifetime's platform.

CLASS ACTION COMPLAINT

**C. Indiana Class (Lewis and Muangprasert)**
All current and former Indiana residents who are not subscribers to Lifetime's platform and/or identity have been used to market paid subscriptions for Lifetime's platform.

**D. Alabama Class (Caldwell)**
All current and former Alabama residents who are not subscribers to Lifetime's platform and whose name and/or identity have been used to market paid subscriptions for Lifetime's platform.

Excluded from the Classes are Lifetime, its members, managers, employees, attorneys (and attorney family members), and members of the federal judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Classes become more apparent.

103.    **Numerosity (Fed. R. Civ. P. 23(a)(1)).**  On information and belief, the members of the classes are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Lifetime on its website, Plaintiffs reasonably believe that each Class comprises thousands of current and former California, Nevada, Indiana, and Alabama citizens and residents whose profiles are compiled and maintained in Lifetime's database and searchable on its platform. The exact number of persons in each class can be determined from records maintained by Lifetime, but certainly exceeds 40, and is estimated to be in the thousands.

104.    **Commonality (Fed. R. Civ. P. 23(a)(2))**. Many common questions of law and fact exist as to Plaintiffs and members of the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a)     whether Lifetime uses Plaintiffs' and Class Members' identities in search results and profile information for its own commercial benefit;

(b)     whether the conduct described herein constitutes a violation of right of publicity statues for California, Nevada, Indiana, and Alabama:

(c)     whether Lifetime's violations of the various right of publicity statues were willful, which would entitle Plaintiffs and the Classes to punitive damages; and

16

(d)     whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

105.    Plaintiffs and the members of the Classes have a commonality of interest in the subject matter of the lawsuit and remedies sought.

106.    **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiffs' claims are typical of the claims of the members of the Classes. Lifetime's misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

107.    **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)).** As demonstrated above, Lifetime has acted on grounds generally applicable to the proposed class such that final injunctive relief is appropriate with respect to each Class as a whole.

108.    **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Classes. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and their Classes.

109.    **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of Lifetime's liability on Plaintiffs' claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Lifetime may assert and attempt to prove will come from Lifetime's records and will not require individualized or separate inquiries or proceedings;

(c)     Lifetime has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d)     The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against

1    Lifetime economically feasible. Even if Class Members could afford individual

2    litigation, those actions would put immeasurable strain on the court system. A class

3    action, on the other hand, will permit a large number of claims involving virtually

4    identical facts and legal issues to be resolved efficiently in one proceeding based

5    upon common proofs, without the risk of inconsistent judgments; and

6    (e)    This case is inherently manageable as a class action in that:

7    (i)    Lifetime's records will enable Plaintiffs to readily identify class members and

8    establish liability and damages;

9    (ii)    Liability and damages can be established for Plaintiffs and each Class with

10    the same common proofs;

11    (iii)    A class action will result in an orderly and expeditious administration of

12    claims and it will foster economics of time, effort, and expense;

13    (iv)    A class action will contribute to uniformity of decisions concerning

14    Lifetime's practices; and

15    (v)    As a practical matter, the claims of the Classes are likely to go unaddressed

16    absent class certification.

17    **<u>COUNT I - VIOLATION OF CALIFORNIA CIVIL CODE § 3344, <em>et seq.</em></u>**

18    110.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-21, 30-

19    64, and 100-109 of this Complaint.

20    111.    As stated, California's Right of Publicity Statute, California Civil Code § 3344,

21    prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any

22    manner … without such person's prior consent."

23    112.    Section 3344 provides for damages for any such violation in the amount of $750 or

24    the actual damages suffered on account of the unauthorized use. It also provides for the possibility

25    of an award for punitive damages. *Id.*

26

27

28

CLASS ACTION COMPLAINT

113.    By engaging in the foregoing acts and omissions, Lifetime used Heinz's and Sweeten's and California Class Members' names and identities for commercial purposes without first obtaining prior consent.

114.    Each use of Heinz's, Sweeten's and the California Class Members' identities is a separate and distinct violation of § 3344 giving rise to damages.

115.    As a result of Lifetime's violations, Heinz and Sweeten and the California Class Members have suffered injury to their publicity rights as well as economic damages. Heinz, Sweeten and the California Class Members have been denied the commercial value of their identities, which Lifetime used without permission from or compensation to Heinz and Sweeten and the Class Members. Heinz and Sweeten and California Class Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

116.    Heinz and Sweeten, on behalf of themselves and the California Class, seek statutory damages for each violation of § 3344, or alternatively, actual damages suffered by Heinz and Sweeten and the California Class Members for the unauthorized use, whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT II – VIOLATION OF NEVADA RIGHT OF PUBLICITY STATUTE

117.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-19, 22-24, 30-46, 66-73, and 100-109 of this complaint.

118.    As stated, Nevada's Right of Publicity Statute, NV ST. § 597.810, prohibits "any commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use."

119.    Section 597.810 provides for actual damages for any such violation, but not less than $750, injunctive relief, and "[e]xemplary or punitive damages, if the trier of fact finds that the defendant knowingly made use of the name, voice, signature, photograph or likeness of another person without the consent."

CLASS ACTION COMPLAINT

120.    By engaging in the foregoing acts and omissions, Lifetime used Edwards' and the Nevada Class Members' names and identities for commercial purposes, in Nevada and elsewhere, without first obtaining prior consent.

121.    Each use of Edwards' and the Nevada Class Members' names and identities is a separate and distinct violation of Section 597.810 giving rise to damages.

122.    As a result of Lifetime's violations, Edwards and the Nevada Class have suffered injury to their publicity rights as well as economic damages. Edwards and the Nevada Class Members have been denied the commercial value of their names and identities, which Lifetime used without permission from or compensation to Edwards and the Nevada Class. Edwards and Nevada Class Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

123.    Edwards, on behalf of herself and the Nevada Class, seeks damages for each violation of Section 597.810, not less than $750; exemplary or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## **<u>COUNT III – VIOLATION OF INDIANA PUBLICITY STATUTE</u>**

124.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 25-26, 30-46, 74-90 and 100-109 of this Complaint.

125.    As stated, Indiana's Publicity Code, IC § 32-36-1-8, prohibits the commercial use of an individual's "personality," which includes the individual's name and other identifying characteristics, so long as they have value, without written consent.

126.    Section 32-36-1-10 of the Code provides for $1,000 or actual damages, whichever is greater, and treble or punitive damages if the violation is "knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

127.    By engaging in the foregoing acts and omissions, Lifetime used Lewis', Muangprasert's, and the Indiana Class Members' personalities for commercial purposes, in Indiana without first obtaining written consent. The use of Lewis', Muangprasert's, and the Indiana Class Members' personalities in this manner demonstrates that they have commercial value.

CLASS ACTION COMPLAINT

128.    Each use of Lewis', Muangprasert's and the Indiana Class Members' personalities is a separate and distinct violation giving rise to damages.

129.    As a result of Lifetime's violations, Lewis, Muangprasert, and the Indiana Class have suffered injury to their publicity rights as well as economic damages. Lewis, Muangprasert and the Indiana Class Members have been denied the commercial value of their personalities, which Lifetime used without permission from or compensation to Lewis, Muangprasert, and the Indiana Class. Lewis, Muangprasert and the Indiana Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

130.    Lewis and Muangprasert, on behalf of themselves and the Indiana Class, seek damages for each violation of IC § 32-36-1-8; treble or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT IV – VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE

131.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 27-46, 91-99, and 100-109.

132.    As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

133.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

134.    By engaging in the foregoing acts and omissions, Lifetime used Caldwell's and the Alabama Class Members' personalities for commercial purposes, in Alabama and elsewhere, without first obtaining written consent. The use of Caldwell's and the Alabama Class Members' personalities in this manner demonstrates that they have commercial value.

CLASS ACTION COMPLAINT

135.    Each use of Caldwell's and the Alabama Class Members' identity is a separate and distinct violation giving rise to damages.

136.    As a result of Lifetime's violations, Caldwell and the Alabama Class have suffered injury to their publicity rights as well as economic damages. Caldwell and the Alabama Class Members have been denied the commercial value of their personalities, which Lifetime used without permission from or compensation to Caldwell and the Alabama Class. Caldwell and the Alabama Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

137.    Caldwell, on behalf of himself and the Alabama Class, seeks damages for each violation of ARPA in the about of $5,000 per action, or compensatory damages including Lifetime's profits; any other damages available under Alabama law, including punitive damages, prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, Brian Heinz, Eric Sweeten, Marie Edwards, Lula Lewis, Sharon Muangprasert, and Tyree Caldwell, individually and on behalf of all other similarly situated persons, demand judgment in their favor and against Defendant, The Lifetime Value Co. LLC, as follows:

A.    Certifying this case as a class action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B.    Declaring that Lifetime's actions, as described herein, violate the right of publicity statutes in California, Nevada, Indiana and Alabama;

C.    Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or alternatively, actual damages and profits derived from the unauthorized use of the Plaintiffs' or Class Members' identities, whichever is greater, plus prejudgment interest;

D.    Awarding punitive or exemplary damages to Plaintiffs and the Classes for each violation of the respective statutes, if appropriate;

E.    Enjoining Lifetime from committing further violations of their right of publicity;

F.     Awarding Plaintiffs reasonable attorneys' fees and costs incurred in filing and prosecuting this action;

G.     Awarding such other and further relief as this Court deems appropriate and just.

DATED: March 26, 2025                    By: /s/ S. Chandler Visher
                                         S. Chandler Visher - S.B.N 52957
                                         268 Bush St., #4500
                                         San Francisco, CA  94104
                                         Telephone: 415-901-0500
                                         chandler@visherlaw.com

                                         And

                                         Brian J. Wanca (*pro hac to be submitted*)
                                         Wallace C. Solberg (*pro hac to be submitted*)
                                         ANDERSON + WANCA
                                         3701 Algonquin Road, Suite 500
                                         Rolling Meadows, IL 60008
                                         Telephone: 847-368-1500
                                         bwanca@andersonwanca.com
                                         wsolberg@andersonwanca.com

23

CLASS ACTION COMPLAINT